UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Jeff Christoff,                                                  Case No. 3:23-cv-1132

               Plaintiff,

       v.                                               MEMORANDUM OPINION
                                                          AND ORDER

Ohio Northern University,

               Defendant.

## I. INTRODUCTION

Defendant Ohio Northern University has filed a motion for judgment on the administrative record in this case. (Doc. No. 16). Plaintiff Jeff Christoff, acting *pro se*, filed a brief in opposition. (Doc. No. 17). ONU filed a brief in reply. (Doc. No. 18). For the reasons stated below, I grant ONU's motion.

## II. BACKGROUND

Christoff is a Professor of Medical Chemistry in ONU's Raabe College of Pharmacy. (*See* Doc. No. 10-1 at 2). He has elected to participate in ONU's Defined Contribution Retirement Plan, through which ONU deducts a portion of the employee's salary into an individual retirement account and makes regular matching contributions to that account. (*See id.* at 1; Doc. No. 16-1).

As relevant here, the Plan provides that certain classes of ONU employees may "reduce [their] compensation by a specific percentage and have that amount contributed to the Plan as an elective deferral" each pay period. (Doc. No. 16-1 at 6). If an employee takes such a deferral,

"[e]ach payroll period, the Employer will make a matching contribution equal to 100% of [the] elective deferrals" up to 3% of the employee's compensation for that payroll period. (*Id.* at 7).

The Plan makes ONU itself the Plan Administrator, and it provides an address and telephone number at which the Plan Administrator can be reached.¹ (*Id.* at 21-22). The Plan Administrator "is responsible for the day-to-day administration and operation of the Plan," which includes "maintain[ing] the Plan records" providing participants with the "forms [they] need to complete for Plan participation," and administering payments. (*Id.* at 20). The Plan Administrator is also responsible for allowing a plan participant to "review the formal Plan document and certain other materials related to the Plan" and for answering "questions about the Plan or . . . participation." (*Id.*). The Plan Administrator "may designate other parties to perform some duties of the Plan Administrator," though "some duties are the responsibility of the investment provider(s) to the Plan." (*Id.* at 21).

The Plan Administrator "has the complete power, in its sole discretion, to determine all questions arising in connection with the administration, interpretation, and application of the Plan (and any related documents and underlying policies)." (Doc. No. 16-1 at 21). Such a determination "is conclusive and binding upon all persons." (*Id.*). The Plan further provides that the "[e]mployer"—ONU, in this case—"has the right to amend the Plan at any time." (*Id.* at 16). But no amendment may "authorize or permit any part of the Plan assets to be used for purposes other than the exclusive benefit of Participants or their beneficiaries. Additionally, no amendment will cause any reduction in the amount credited to [an employee's] account." (*Id.*).

---

¹ The Plan Administrator for the version of the Plan in effect as of July 1, 2022, is a different entity, Pentegra Services, Inc. (*See* Doc. No. 13-1 at 25). As ONU concedes, ONU was the Plan Administrator at the time ONU made the decision regarding the employer contributions challenged by Christoff in this litigation. (*See* Doc. No. 16-1 at 20; Doc. No. 16 at 3).

The Plan also provides a process for filing a "claim for benefits." (*Id.*). A Plan participant must "submit[] a written request for benefits to the Plan Administrator." (*Id.*). "[I]f there is an applicable distribution form" the Plan Administrator requires a Plan participant to use for benefits claims, such a form "must be used" to submit a claim. (*Id.*). But "[i]f no specific form is required or available, then [a] written request for a distribution will be considered a claim for benefits." (*Id.*).

The Plan Administrator must render a decision on the claim for benefits "within a reasonable period of time appropriate to the circumstances." (Doc. No. 16-1 at 16). If the Plan Administrator determines the claim is valid, the claimant "will receive a statement describing the amount of benefit, the method or methods of payment, the timing of distributions[,] and other information relevant to the payment of the benefit." (*Id.*). When a claim for benefits is denied, in whole or in part, the Plan Administrator must provide the claimant with a "written or electronic notice" explaining the decision, generally within 90 days. (*Id.* at 16-17). After that, a claimant who "want[s] to submit [a] claim for review . . . must follow the claims review procedure." (*Id.* at 17).

A request for review—essentially, an appeal of the denial of benefits—must be filed "in writing, with the Plan Administrator" within 60 days of the date the claimant receives "written notification of the denial of [the] claim for benefits." (*Id.* at 18). On review, a claimant may submit "written comments, documents, records, and other information relating to your claim for benefits," and a person may additionally request access to, and copies of, "all documents, records, and other information relevant to [the] claim for benefits." (*Id.*). Further, the Plan Administrator "will take into account all comments, documents, records, and other information submitted by [the claimant] relating to [the] claim, without regard to whether such information was submitted or considered in the initial benefit determination." (*Id.*).

The Plan Administrator must provide a claimant "with written or electronic notification of the Plan's benefit determination on review," generally within 60 days after the Plan Administrator

3

receives a claim for review. (Doc. No. 16-1 at 18). The Plan Administrator must provide this notification "in a culturally and linguistically appropriate manner," and, if the denial of benefits is upheld on review, the notification will include the "specific reasons" for the adverse determination, "[r]eference to the specific Plan provisions" on which the denial was based, and a statement that the claimant is "entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to [the] claim for benefits." (*Id.*). After going through this appeals process, a claimant "may file suit in a state or federal court," but they must do so "no later than 180 days after the date of the Plan Administrator's final determination denying your claim." (*Id.* at 19).

On July 9, 2020, during the height of the first wave of the COVID-19 pandemic, ONU took a slate of actions to stabilize its finances, which included "[s]uspending temporarily" the employer contributions under the Plan "from July 1, 2020 to May 31, 2021." (Doc. No. 10-1 at 10). On July 17, 2020, Christoff, who was a member of ONU's Financial and Operational Strength Work Group at the time, emailed Tonya Paul, the Director of Human Resources at ONU, noting the lack of an employer matching contribution in his July 15 paycheck and asking for an explanation of ONU's action because he wanted "to report to [his] colleagues the status of [the] employer contributions" at a "College of Pharmacy faculty meeting" taking place later that day. (*Id.* at 7). In response, Paul stated that "[t]he decision to suspend on July 1st was a decision made by the University to preserve cash at a point in time that would be equitable to all employees" and, further, that "[o]ur plan documents allow for the amendment that was executed." (*Id.*). Christoff disagreed strongly with this decision, urging "[j]ust because it is legally permissible to do so, does not mean it is a good idea" and comparing it to "defaulting on debt covenants with lenders." (*Id.* at 9).

According to Christoff, ONU's decision denied him matching contributions under the Plan for three pay periods: July 15, 2020, July 30, 2020, and August 14, 2020. (Doc. No. 1-2). He asserts

4

this cost him $1,037.76 plus interest at a rate of 6.0% per year. (*See id.*). So, on May 1, 2023, he sued ONU in the Hardin County, Ohio Municipal Court, acting *pro se*, alleging a claim for "failure to compensate 9-month faculty with employer retirement contributions (pre-tax) for July 15th, July 30th, and Aug[ust] 14th payrolls for work completed by May 13, 2020." (*Id.*). On June 6, 2023, ONU removed the case to this court. (*See* Doc. No. 1).

### III. STANDARD

A plaintiff's challenge to a denial of benefits under an ERISA plan is subject to *de novo* review, "unless the plan gives the plan administrator or fiduciary discretionary authority to determine benefit eligibility or construe the terms of the plan." *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 437-38 (6th Cir. 2006) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). If so, "the arbitrary and capricious standard" applies. *Laake v. Benefits Comm., W. & S. Fin. Grp.*, 68 F.4th 984, 990 (6th Cir. 2023). The plan's delegation of discretion must be "clear," but the plan documents do not need to "use the term 'discretionary' or some other specific terminology." *Hoover v. Provident Life & Accident Ins. Co.*, 290 F.3d 801, 807 (6th Cir. 2002) (citations omitted).

Here, the Plan states: "The Plan Administrator has the complete power, in its sole discretion, to determine all questions arising in connection with the administration, interpretation, and application of the Plan (and any related documents and underlying policies). Any such determination by the Plan Administrator is conclusive and binding upon all persons." (Doc. No. 16-1 at 21). I conclude this explicit and emphatic language gives ONU discretionary authority to determine benefits eligibility and construe the terms of the plan. Accordingly, my review of the administrative record is governed by the "arbitrary and capricious" standard.

In addition, when adjudicating an ERISA benefit action, the district court's review is generally limited to consideration of "the evidentiary materials contained in the administrative

5

record." *Moore*, 458 F.3d at 430 (quoting *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 619 (6th Cir. 1998)).

Pursuant to my previous Order, (Doc. No. 5), the parties have submitted the administrative record in this case. (*See* Doc. Nos. 10 & 13). To supplement these filings, the parties also submitted various exhibits attached to their briefing.[2] (*See* Doc. Nos. 16-1, 17-2, 17-3, 17-4, & 17-5). The parties do not contest that these documents, too, are part of the administrative record. (*See* Doc. No. 17 at 4-11; Doc. No. 18). Accordingly, I will treat Document Numbers 10-1, 13-1, 16-1, 17-2, 17-3, 17-4 and 17-5 as the administrative record for purposes of this motion. *See Likas v. Life Ins. Co. of N. Am.*, 222 F. App'x 481, 485 (6th Cir. 2007) (noting a district court's "broad discretion in regulating discovery" in ERISA matters with regard to the administrative record). In addition, because Christoff is proceeding *pro se*, I construe his filings "liberally." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

IV.  ANALYSIS

Federal law permits an individual covered under an ERISA plan "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).[3] "Every employee

---

[2] One of Christoff's filings in this case, a submission related to the administrative record, discusses four additional claims not presented in his complaint. (*See* Doc. No. 10). It is not clear whether Christoff intended this submission as an amended complaint or if he merely meant to supplement the administrative record. In any case, Christoff must obtain leave to amend his complaint if he wishes to do so, since ONU filed an Answer before Christoff submitted his supplemental filing. *See, e.g.*, *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010); Fed. R. Civ. P. 15(a). Christoff has not filed any kind of request for leave to amend his complaint. So, in keeping with the liberal standard used to evaluate *pro se* filings, I construe this submission as a supplement to the administrative record in this case rather than an impermissible amended complaint.

[3] I construe Christoff's sparsely-pleaded complaint as stating a claim for the recovery of benefits under the Plan pursuant to 29 U.S.C. § 1132(a)(1)(B) because he "contends that his benefits were improperly calculated" and that he is owed benefits for three specific pay periods. *Durand v. Hanover Ins. Grp., Inc.*, 560 F.3d 436, 439 (6th Cir. 2009).

6

benefit plan covered by ERISA is required to 'afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.'" *Coomer v. Bethesda Hosp., Inc.*, 370 F.3d 499, 504 (6th Cir. 2004) (quoting 29 U.S.C. § 1133). Federal regulations set forth extensive minimum procedural requirements for benefits claims brought before a plan administrator. *See* 29 C.F.R. § 2560.503-1. As a result, "ERISA plan beneficiaries must exhaust administrative remedies prior to bringing a suit for recovery on an individual claim." *Hill v. Blue Cross and Blue Shield of Mich.*, 409 F.3d 710, 717 (6th Cir. 2005).

The Plan requires an employee to bring a "claim for benefits" by "submitting a written request for benefits to the Plan Administrator," either via a distribution form if the Plan Administrator requires one or via a "written request for a distribution" if there is no required form. (Doc. No. 16-1 at 16). Christoff does not attempt to identify any evidence in the record showing he submitted a written request for benefits to ONU as the Plan Administrator. (*See* Doc. No. 17-1).

Even construing his filings liberally, his email correspondence with Tonya Paul does not comply with the Plan's administrative exhaustion requirements because he did not "request a distribution." (Doc. No. 16-1 at 16); *see Coomer*, 370 F.3d at 505 (holding the plaintiffs failed to exhaust their administrative remedies because they did not "request[] a lump sum disbursement in excess of $5,000 from the Plan prior to filing" their lawsuit, as required by the Plan). Instead, at most, he asks for Paul to justify ONU's decision to withhold contributions under the Plan as a matter of policy and criticizes the decision for its perceived effect on the relationship between ONU and its faculty. (*See* Doc. No. 10-1 at 7-9).

Further, even if this correspondence could be construed as an initial "claim for benefits," there is no evidence Christoff complied with the Plan's appellate "claims review procedure" by

7

submitting a written request for review. (*See* Doc. No. 16-1 at 18-19). So, he did not exhaust the administrative procedures provided by the Plan.

Christoff does not contend otherwise. (*See* Doc. No. 17-1 at 10-12). Instead, he makes two arguments, neither persuasive. First, he asserts he was not required to exhaust the administrative remedies in the Plan because that requirement applies to a plan for "retirement **benefits**," and "Plaintiff was denied retirement **contributions**." (Doc. No. 17-1 at 12) (emphasis original). By this, he appears to suggest that ONU's matching contribution to his retirement account is not a retirement benefit under the Plan for purposes of the administrative exhaustion requirement. He cites no source of law to support this argument, and he does not point to any provision of the Plan that makes this distinction. (*See id.*).

Applicable case law does not draw a line between "benefits" and "contributions" for purposes of ERISA's administrative exhaustion requirement. *See, e.g.*, *Hitchcock v. Cumberland Univ. 403(b) DC Plan*, 851 F.3d 552, 556, 564 (6th Cir. 2017) (considering claims related to the denial of an employer matching contribution and differentiating only between claims for the "denial of benefits" and claims based on the "denial of statutory rights"). *See also Gerber v. Ohio Northern University*, No. 3:14 CV 2763, 2015 WL 1996252 at *13 (N.D. Ohio April 30, 2015) (analyzing the plaintiff's ERISA claim for matching contributions under a retirement plan as a claim for benefits under 29 U.S.C. § 1132(a)(1)(B)); *Clark v. Ford Motor Co.*, Case No. 2:19-cv-11410, 2022 WL 17826907 at *4 (E.D. Mich. Aug. 19, 2022) (same). Likewise, the federal regulations outlining the requirements ERISA plans must follow for claims procedures do not carve out an exception for employer matching contributions either. *See* 29 C.F.R. § 2560.503-1(e).

Finally, the Plan itself indicates that a matching contribution is a "benefit." *See Hunter v. Caliber Sys., Inc.*, 220 F.3d 702, 712 (6th Cir. 2000) (explaining that "[g]eneral rules of contract interpretation" guide the construal of an ERISA plan). The Plan is designed to give ONU

8

employees "the opportunity to save for retirement on a tax advantaged basis" by investing a portion of each paycheck in an individual retirement account. (Doc. No. 16-1 at 5). Employer contributions to an employee's retirement account—whether "matching" or "nonelective"—boost the value of that account and serve the Plan's core purpose of helping that employee save for retirement. (*Id.*).

Moreover, the distributions an employee can receive under the Plan represent the accrued investment value of the combination of employee and employer contributions into that employee's retirement account. (*See id.* at 10-14). The Plan's administrative procedures for claims for benefits clearly refer to a "distribution" of funds in an employee's retirement account. (*See id.* at 16-19). So, just as a distribution of retirement account funds *from* the account is a retirement benefit under the Plan, so too is an employer's matching contribution of funds *into* that retirement account. This conforms with the text, structure, and purpose of the Plan, as well as common sense. I reject Christoff's argument that an employer's matching contribution is not a "benefit" for purposes of the administrative exhaustion requirement.

Second, Christoff argues he should be excused from the administrative exhaustion requirement because "Defendant failed to inform and guide Plaintiff to necessary sections of the [Plan summary] to submit a formal claim . . . Defendant does not provide employee training regarding dispute resolution for employee benefit plans." (Doc. No. 17-1 at 10). The Sixth Circuit has recognized a "futility" exception to the administrative exhaustion requirement. *See, e.g.*, *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 419 (6th Cir. 1998). But Christoff does not suggest it would have been futile for him to comply with the Plan's administrative exhaustion requirements. (*See* Doc. No. 17-1 at 10-12). Instead, he essentially contends he did not know about the appropriate procedures to follow and thus should not be required to comply with them.

9

Christoff cites nothing to support such an exception, and I find no support for such an exception in the guiding case law. Certainly, "'one of ERISA's central goals is to enable beneficiaries to learn their rights and obligations at any time,' including before a denial of benefits." *Wallace v. Oakwood Healthcare Inc.*, 954 F.3d 879, 887 (6th Cir. 2020) (quoting *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1995)). But ERISA accomplishes this goal by "requir[ing] plans to be 'established and maintained pursuant to a written instrument' that enable[s] beneficiaries to determine those rights and obligations 'on examining the plan documents.'" *Id.*

ERISA further requires employees be provided with a "summary plan description" that includes a "description of all claims procedures." *Wallace*, 954 F.3d at 888 (quoting 29 C.F.R. § 2560.503-1(b)(2)) (internal quotation marks omitted). This plan description "shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a).

Christoff does not argue he was not provided with a summary plan description, and he does not argue the SPD's description of ONU's claims procedures is deficient. (*See* Doc. No. 17-1 at 10-12). So, he was "reasonably apprise[d] . . . of [his] rights and obligations under the plan," including the administrative procedures for filing a claim for benefits. 29 U.S.C. § 1022(a). Absent any indication that ONU's summary plan description did not comply with ERISA's "elaborate scheme . . . for enabling beneficiaries to learn their rights and obligations at any time . . . built around reliance on the face of written plan documents," I reject Christoff's argument that he should be excused from complying with the Plan's administrative claims procedures merely because he did not know about them. *Curtiss-Wright Corp.*, 514 U.S. at 83.

Further, to the extent Christoff suggests there is an independent requirement that a Plan Administrator conduct "employee training" regarding administrative claims processing procedures

10

beyond providing a summary of the plan details, I reject that argument as well. Christoff cites no source of law to support this notion, and I have found no statute, case, or regulation suggesting such a duty exists.

Because Christoff has failed to exhaust his administrative remedies under the Plan, I dismiss the sole ERISA claim he brings in his Complaint.

### V. CONCLUSION

For the reasons stated above, I grant ONU's motion for judgment on the administrative record. (Doc. No. 16).

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge